# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| **KRISTEN SHERWOOD,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **Civil Action No. 5:22-cv-499-CLS** |
| ) | |
| **UNITED PARCEL SERVICE,** ) | |
| **CO., INC., and** ) | |
| **USAA CASUALTY** ) | |
| **INSURANCE CO.,** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM OPINION

Plaintiff, Kristen Sherwood, sustained serious injuries on May 22, 2020, when the vehicle she was driving westbound on Governors Drive in Huntsville, Alabama, left the road and crashed, near the intersection of Monte Sano Boulevard. She alleges that the accident occurred when she was forced to swerve, to avoid colliding with a vehicle which, *she believes*, to have been driven by an employee of defendant United Parcel Service Co., Inc. ("UPS"). Plaintiff originally filed this action in the Circuit Court of Madison County, Alabama, on March 23, 2022.[1] Her complaint against UPS asserts claims of negligence, wantonness, negligent and wanton entrustment, and negligent and wanton hiring, training, retention, and supervision. Defendant UPS

---

[1] Doc. no. 1-1 (State Court Complaint).

...

timely removed the action to this court, with the consent of co-defendant USAA Casualty Insurance Co., on April 20, 2022, based upon the court's diversity jurisdiction.[2]

UPS filed a motion for summary judgment on June 12, 2023.[3] Plaintiff, who is represented by counsel, was ordered to respond to the motion no later than July 3, 2023, but she failed to do so. Instead, on Saturday, August 5, 2023 — more than a month late — she filed a motion to voluntarily dismiss the action under Federal Rule of Civil Procedure 41(a)(2), which allows dismissal on "terms that the court considers proper."[4] Further, "[u]nless the [court's] order states otherwise, a dismissal under

---

[2] Doc. no. 1 (Notice of Removal).

[3] Doc. no. 27.

[4] Federal Rule of Civil Procedure 41(a) provides for the voluntary dismissal of actions in the following circumstances:

**(1) *By the Plaintiff.***

   **(A)** *Without a Court Order.* Subject to Rules 23(e), 23.1(c), 23.2, and 66 and any applicable federal statute, the plaintiff may dismiss an action without a court order by filing:

      **(i)** a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment; or

      **(ii)** a stipulation of dismissal signed by all parties who have appeared.

   **(B)** *Effect.* Unless the notice or stipulation states otherwise, the dismissal is without prejudice. But if the plaintiff previously dismissed any federal- or state-court action based on or including the same claim, a notice of dismissal operates as an adjudication on the merits.

**(2) *By Court Order; Effect.*** Except as provided in Rule 41(a)(1), an action may be

[Rule 41(a)(2)] is without prejudice." *Id.* (alterations supplied).

Plaintiff cites Eleventh Circuit precedent stating that a court ordinarily should grant such a motion, unless the defendant shows "clear legal prejudice." *Pontenberg v. Boston Scientific Corp.*, 252 F.3d 1253, 1255 (11th Cir. 2001). The Eleventh Circuit directs the district court to "weigh the relevant equities and do justice between the parties in each case, imposing such costs and attaching such conditions to the dismissal as are deemed appropriate." *McCants v. Ford Motor Co.*, 781 F.2d 855, 857 (11th Cir. 1986).

> Neither the fact that the litigation has proceeded to the summary judgment stage nor the fact that the plaintiff's attorney has been negligent in prosecuting the case, alone or together, conclusively or per se establishes plain legal prejudice requiring the denial of a motion to dismiss.

*Pontenburg*, 252 F.3d at 1256 (citing *Durham v. Florida East Coast Railway Co.*, 385 F.2d 366 (5th Cir. 1967)). When considering the motion, protection of the defendant's interest is paramount — *i.e.*, whether the defendant would lose any substantial right by dismissal. *Fisher v. Puerto Rico Marine Management, Inc.*, 940 F.2d 1502, 1503 (11th Cir. 1991); *Durham*, 385 F.2d at 368.

---

dismissed at the plaintiff's request only by court order, on terms that the court considers proper. If a defendant has pleaded a counterclaim before being served with the plaintiff's motion to dismiss, the action may be dismissed over the defendant's objection only if the counterclaim can remain pending for independent adjudication. Unless the order states otherwise, a dismissal under this paragraph (2) is without prejudice.

This court ordered defendants to respond to plaintiff's motion to dismiss her claims.[5] Defendant USAA Casualty Insurance Co. responded that it had no objection to dismissal without prejudice.[6] The response of UPS, however, contained the following statement:

> Counsel for Plaintiff has informed Counsel for UPS that she agrees there is no evidence indicating UPS caused the accident at issue. As a result, Plaintiff's Counsel has indicated she would consent to UPS's Motion for Summary Judgment and UPS's dismissal with prejudice.

Doc. no. 34. The court ordered plaintiff to reply to those statements no later than August 28, 2023.[7] *Once again, plaintiff failed to do so.*

UPS filed a "Supplement to its Response to the Plaintiff's Motion to Dismiss" on August 31, 2023, stating:

> Attached to UPS's supplemented responses [*sic*] is an exhibit of an email between Defense Counsel and Plaintiff's Counsel which demonstrates Plaintiff's consent to UPS's Motion for Summary Judgment. In the email, Defense Counsel asks Plaintiff's Counsel "[c]an you confirm that the Plaintiff is willing to consent to the entry of summary judgment on behalf of UPS?" Defense counsel makes clear he intends to use Plaintiff's Counsel's response as an exhibit in a supplemental motion. In response, Plaintiff's counsel stated that Plaintiff consented to the entry of summary judgment.

Doc. no. 37.

---

[5] Doc. no. 33.
[6] Doc. no. 35.
[7] Doc. no. 36.

In view of Eleventh Circuit precedent, it seems the motion for voluntary dismissal should be granted. Even so, plaintiff's failure to respond to the motion for summary judgment and her delay in filing the motion for voluntary dismissal, combined with the second failure of plaintiff's counsel to comply with the court's order to reply to the response of UPS, is troubling.

Nevertheless, the court will address the merits of the summary judgment motion. *See United States v. One Piece of Real Property*, 363 F.3d 1099, 1101 (11th Cir. 2004) (observing that a district court "cannot base the entry of summary judgment on the mere fact that the motion was unopposed, but, rather, must consider the merits of the motion").

## I.  SUMMARY JUDGMENT STANDARDS

Federal Rule of Civil Procedure 56 provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In other words, summary judgment is proper "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "In making this determination, the court must review all evidence and make all

reasonable inferences in favor of the party opposing summary judgment." *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (*en banc*) (quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)). Inferences in favor of the non-moving party are not unqualified, however. "[A]n inference is not reasonable if it is only a guess or a possibility, for such an inference is not based on the evidence, but is pure conjecture and speculation." *Daniels v. Twin Oaks Nursing Home*, 692 F.2d 1321, 1324 (11th Cir. 1983) (alteration supplied). Moreover,

> [t]he mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is *material* to an issue affecting the outcome of the case. The relevant rules of substantive law dictate the materiality of a disputed fact. A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor.

*Chapman*, 229 F.3d at 1023 (quoting *Haves*, 52 F.3d at 921) (emphasis and alteration supplied). *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986) (asking "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law"). "A mere 'scintilla' of evidence supporting the [nonmoving] party's position will not suffice; there must be a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-

moving party, there is no genuine issue for trial." *Matsushita Electric Industrial Company v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## II.  FACTUAL BACKGROUND

Plaintiff departed her home in Guntersville, Alabama, around 6:00 p.m. on Friday, May 22, 2020. She was traveling to the Huntsville home of a friend named "Arlana," to have dinner and study with fellow students of the Birmingham School of Law.[8] She planned to arrive at Arlana's house by 6:30 p.m.[9] After stopping at the traffic light controlling the intersection of Monte Sano Boulevard with Governors Drive, the following events — as described during plaintiff's deposition — occurred:

> We were coming down the hill, and there was — I was in the left lane. There was a blue truck in the right [lane], and then behind [me] — between me and the blue truck was [a] UPS [brown truck]. And then the blue truck and UPS [truck] were just — were kind of pushing each other, and then UPS was trying to come over in the left lane. And I don't think that he saw me because I remember I avoided him.
>
> Q:  Avoided who?
>
> A:  I avoided the UPS, the brown truck. And then I remember like avoiding — like there's this grass in between the — it's four lanes and there is a median of grass in the middle. And I remember I swerved a little bit toward the left. I avoided the — them trying to come over. And then it happened a second time.
>
> Q:  What did?

---

[8] Doc. no. 27-5 (Plaintiff's dep.), at 32-33, 45.
[9] *Id.* at 33.

> A: The UPS [truck] tried to come over again.
>
> Q: Okay.
>
> A: And I avoided that. So I was trying to swerve out of — like not — I didn't want him to hit me. And so then on — on the third try, I don't remember anything after that.
>
> Q: You don't remember anything after what?
>
> A: I remember there was the two incidents of me trying to swerve out of the way and then I don't remember anything after the second time or third time. So I — I avoided the van, or the UPS [truck] one time, I avoided him another time. On the third time, I wasn't able to avoid the truck. And I don't remember anything after that.

Doc. no. 27-5 (Plaintiff dep.), at 35-36 (alterations supplied).

Three individuals called the 911 emergency number to report the accident.[10] A Huntsville City police officer and a Huntsville Emergency Services ambulance were dispatched to the scene. According to the Alabama Uniform Traffic Crash Report prepared by Huntsville City Police Officer Bobby J. Lane, plaintiff's vehicle

> was involved in a single vehicle accident. It appeared that the driver lost control of the vehicle and ran off the road to the right sticking [*sic*] the rock embankment. After she had struck the embankment the vehicle then re-entered the roadway flipping over what appeared to be multiple times. The vehicle was stopped in the grass median. A white female was located in number 1 lane in oncoming traffic after being ejected

---

[10] Doc. no. 27-4 (Records of the Madison County Communications District), at ECF 2. **NOTE**: "ECF" is an acronym formed from the initial letters of the name of a filing system that allows parties to file and serve documents electronically (*i.e.*, "Electronic Case Filing"). When the court cites to pagination generated by the ECF header, it will, as here, precede the page number(s) with the letters "ECF."

>from the vehicle. The occupant was transported to Huntsville Hospital where she was treated for her injuries.

Doc. no. 27-3, at ECF 3. The report indicates that the police were notified of the accident at "2129 MT [Military Time]" — *i.e.*, 9:29 p.m. According to the report, the police officer arrived two minutes later, at 9:31 p.m. (or "2131 MT"), and the Emergency Medical Services ambulance arrived at 9:35 p.m. (or "2135 MT"). Records maintained by the Madison County Communications District indicate that the 911 calls reporting the accident were received at 9:26 and 9:27 p.m. ("21:26:51," "21:26:59," and "21:27:20" MT).[11]

Plaintiff sustained multiple injuries in the accident, including facial lacerations, fractures of her C5 and C6 vertebrae and eye socket, nerve damage, and left arm paralysis (which required the placement of pins in her left hand).[12]

Despite the times recorded in the police report and in the 911 records, plaintiff testified that the accident occurred nearly three hours earlier. Specifically, she stated that she left her home in Guntersville at 6:00 p.m., and that the accident occurred while she was en route to her friend's home in Huntsville. She testified that the drive to her friend's home took 35 to 40 minutes. She was unable to account for the three-hour difference in the time that she maintains the accident occurred and the recorded

---

[11] Doc. no. 27-3, at ECF 3.

[12] Doc. no. 27-5 (Plaintiff's dep.), at 53-54.

9

time of the 911 calls and the arrival at the accident scene of the police officer and emergency medical services ambulance.[13]

Further, UPS maintains that none of its employees or vehicles were at or near the location of the accident at the time recorded in the police report. UPS identified three employees who were making deliveries at that time: Travis Toone; Vernon Parrish; and, Michael Day. In support of its motion for summary judgment, UPS submitted timecards and delivery data relating to those employees, but that information is largely indecipherable as presented.[14]

Even so, UPS provided the same data and other information to its expert, Kristina Lombardi, a Research Engineer/Crash Reconstructionist employed by Mecanica Scientific Services Corporation.[15] Ms. Lombardi's report indicates that she reviewed and analyzed the following documents: records maintained by the Madison County Communications District of 911 calls made at the time of the accident; Alabama Uniform Traffic Crash Report Number 0648749; plaintiff's complaint;

---

[13] *Id.* at 45-47.

[14] For example, document number 27-9, which is represented to be the timecards for those three employees, consists of 39 pages of illegible charts, none of which list the names of employees, or the times that each worked. UPS did not provide an explanation of the data. Likewise, document numbers 27-12 through 27-14 purport to be records of the "delivery routes" of the three employees, but consist of 44 pages of parts of a spreadsheet that are not presented in a comprehensive, or comprehensible, format. As such, the court is unable to discern from that data the employees' activities on the date of the accident.

[15] Doc. no. 27-15 (Preliminary Analysis Report).

internal hours of service and delivery records provided by UPS; plaintiff's responses to the interrogatories and requests for production; "C-CURE 9000 SWH06 – Door Access Report (Admit or Reject) [Entry report into Huntsville International Airport]"; and, the transcript of plaintiff's deposition. Ms. Lombardi "[p]arsed and organized tabular data files (Microsoft Excel and CSV formats)" from the delivery data provided by UPS, and also researched Google Earth Pro, Google Maps, and "Google Earth Pro KMZ file," as well as specifications for plaintiff's vehicle, a 2006 BMW 325 XI.[16]

Based upon her analysis of all of the foregoing data, Ms. Lombardi concluded that UPS Driver No. 1 made his last stop very close to 9:26 p.m. (*i.e.*, from 21:26:56 to 21:26:57 MT); the last stop was located four to seven miles from the crash scene, with a travel time of approximately eleven to thirteen minutes from the last stop to the crash scene; the first 911 call was recorded at 9:26 p.m. (21:26:51 MT), eliminating the possibility that Driver No. 1 was at the scene of the wreck at the time of the crash; and the travel time from the last stop to the UPS facility was consistent with the driver's "clock out" time of 9:43 p.m. (21:43:48 MT).

The data showed that UPS Driver No. 2, operating as an air delivery and "feeder" driver, was admitted into Huntsville International Airport close to 9:06 p.m.

---

[16] *Id.* at 3.

(*i.e.*, at 21:05:50 MT), approximately 23 minutes before the recorded time of plaintiff's crash. She concluded that it was not

> reasonably likely that Driver 2 would have had time to arrive at the airport at 21:05:50, complete his duties, travel eastbound beyond the incident location, and then turn around to travel westbound in sufficient enough time before the crash occurred (recall that the earliest 911 call log occurred at 21:26:51).

Doc. no. 27-15 (Preliminary Analysis Report), at 6.

With respect to UPS Driver No. 3, Ms. Lombardi determined that:

- Driver 3's last stop took place [around 9:57 p.m. (*i.e.*,] from 20:57:14 - 20:57:52 [MT])

- It would take approximately 11 minutes for the route from Driver 3's last stop to the incident location about 5 to 6 miles away, putting the driver there at approximately 21:09:00 (the earliest 911 call log occurred at 21:26:51)

- It would take approximately 13 to 16 minutes for the route from the incident location to the UPS Customer Care Center in Huntsville, AL about 8 to 9 miles away

- Driver 3's clock out time was at 21:22:12 (21.37 hrs as indicated on UPS0027), which is about 4 minutes prior to the earliest 911 call log

- It would take approximately 11 to 15 minutes for the route from Driver 3's last stop to the UPS Customer Center in Huntsville, AL about 7 to 8 miles away

- The travel time for the route from Driver 3's last stop to the UPS Customer Care Center is consistent with the driver's clock out time. The travel time for the route from Driver 3's last stop, to

  the crash location and then to the UPS Customer Center is not consistent with the time of the earliest 911 call log

- Due to the locations and times of Driver 3's last stop and clock out information, as well as the crash time, he could not have been at the incident location during the time of the crash.

*Id.* at 6-7. Based upon all of the foregoing data, Ms. Lombardi summarized her conclusions as follows:

> During the reported time of the collision and time leading up to the collision, there were a total of three UPS Delivery vehicles on the roadway in the city of Huntsville, AL. Drivers 1 and 3 could not have been at the BMW crash location when the incident took place. Driver 2 was not reasonably likely at the BMW crash location at the time of the crash. The only way Driver 2 was at the incident location would be if he checked in at the airport, left immediately, drove straight to the area of the incident, traveled eastbound past the collision area, made a U-Turn and traveled westbound to the incident location.

*Id.* at 7.

## II. DISCUSSION

### A. Negligence

Under Alabama law, "[i]t is well settled that in every action grounded upon negligence, there are three essential elements to a right of recovery. First, a duty owed by the defendant to the plaintiff; second, a breach of that duty; and third, an injury proximately caused by the breach." *Quillen v. Quillen*, 388 So. 2d 985, 988 (Ala. 1980). UPS contends that plaintiff's claim must fail because she cannot show

13

that UPS breached a duty of care, or that the actions of UPS were the actual or proximate cause of her injuries. This is so, UPS argues, because there was no UPS vehicle at the scene of the accident.

UPS presented the evidence described above in support of its motion for summary judgment. Plaintiff failed to respond to the motion, thereby triggering Federal Rule of Civil Procedure 56(e), which provides: "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," summary judgment is appropriate if the facts show "the movant is entitled to it." Fed. R. Civ. P. 56(e)(3).

UPS supported its motion with unrebutted, objective evidence that no UPS vehicles were located near the accident site at the time of the incident. The *only* evidence that supports plaintiff's allegation that a UPS driver forced her off the road is her deposition testimony. She testified, however, that the accident occurred several hours earlier than the time recorded in the Alabama Uniform Traffic Crash Report and in the records of the 911 calls reporting the accident. When confronted with this discrepancy, plaintiff had no explanation. Plaintiff's deposition testimony amounts only to a "scintilla" of evidence, and cannot overcome the motion for summary judgment.[17]

---

[17] In making this finding, the court does not make a credibility determination, but, rather, finds that on the record as a whole, plaintiff's negligence claim cannot survive summary judgment.

### B.     Wantonness

The Alabama Code defines wantonness as "[c]onduct which is carried on with a reckless or conscious disregard of the rights and safety of others." Ala. Code § 6-11-20(b)(3).  The Alabama Supreme Court has explained that "wantonness" is the "conscious doing of some act or the omission of some duty while knowing of the existing conditions *and* being conscious that, from doing or omitting to do an act, injury will likely or probably result."  *Ex parte Essary*, 992 So. 2d 5, 9 (Ala. 2007) (citing *Bozeman v. Central Bank of the South*, 646 So. 2d 601 (Ala. 1994)).

Plaintiff's wantonness claim must fail for the same reasons stated above — *i.e.*, that, her deposition testimony alone constitutes a "mere scintilla" of evidence, and is insufficient, in view of the unrebutted, objective evidence of record, to support a denial of summary judgment.

### C.     Remaining Claims — Negligent/Wanton Entrustment, and Negligent and Wanton Hiring, Training, and Supervision

Likewise, neither of the remaining claims survives summary judgment.  Under Alabama law, those torts

> have common elements.  Namely, to prove a claim under Alabama law for either negligent/wanton entrustment, negligent hiring, negligent supervision or negligent retention, a plaintiff must demonstrate that the employer knew, or in the exercise of ordinary care should have known that its employee was incompetent.

15

*Britt v. USA Truck, Inc.*, Civil Action No. 2:06cv868-ID(WO), 2007 WL 4554027, at *4 (M.D. Ala. Dec. 20, 2007) (citing *Armstrong Business Services v. AmSouth Bank*, 817 So. 2d 665, 682 (Ala. 2001) (negligent supervision); *Bruck v. Jim Walter Corp.*, 470 So. 2d 1141, 1144 (Ala. 1985) (negligent/wanton entrustment); *Brown v. Vanity Fair Mills, Inc.*, 277 So. 2d 893, 895 (Ala. 1973) (negligent retention); *Sanders v. Shoe Show, Inc.*, 778 So. 2d 820, 824 (Ala. Civ. App. 2000) (negligent hiring)).

Here, because plaintiff failed to identify an employee of UPS who allegedly caused the accident, and, accordingly, failed to demonstrate that any such employee was known by UPS to be incompetent, these claims are due to be dismissed.

### III. CONCLUSION

For all of the foregoing reasons, the motion of UPS for summary judgment is due to be granted. A Final Judgment consistent with this memorandum opinion will be entered contemporaneously herewith.

**DONE** this 7th day of September, 2023.

_____
Senior United States District Judge